UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

JOHN DOE I                              CIVIL ACTION

v.                                      NO. 13-128

HOLY SEE, ET AL.                        SECTION "F"

<u>ORDER AND REASONS</u>

Before the Court are three motions: (1) Holy See's motion to dismiss for insufficient service of process, insufficient process and lack of personal jurisdiction; (2) motion to limit discovery to prescription by defendants The Society of the Roman Catholic Church of the Diocese of Lake Charles, the Most Reverend Glen J. Provost, and the Roman Catholic Church of the Archdiocese of New Orleans; and (3) the plaintiff's motion to stay discovery pending resolution of Holy See's defense of foreign sovereign immunity.   For the reasons that follow, Holy See's motion is GRANTED, but the plaintiff's request for a reasonable time to attempt service of process is GRANTED; the Diocese, Archdiocese, and Bishop Provost's motion for limited discovery is DENIED; and the plaintiff's motion to stay discovery is GRANTED.

## Background

This case arises out of troubling allegations that a Catholic priest sexually abused a young parishioner, and that leadership within the Roman Catholic Church concealed and covered-up the sexual abuse.

1

John Doe alleges that he has suffered damages as a result of being sexually abused by former Catholic Priest Mark Anthony Broussard at various locations in Louisiana from 1985 to 1988 and again in 1992, when Doe was a young boy.  Doe alleges that he was so severely traumatized by Broussard's deviant sexual conduct that he lost all recollection and memory of the specific incidents and acts of sexual abuse until March 2012.[1]

On January 23, 2013 plaintiff, suing pseudonymously as John Doe, sued Most Reverend Gregory M. Aymond, his predecessors and successors as Archbishop of the Roman Catholic Church of the Archdiocese of New Orleans; the Holy See (State of the Vatican); the Roman Catholic Church of the Archdiocese of New Orleans; the Society of the Roman Catholic Church of the Diocese of Lake Charles; Most Reverend Glen J. Provost, his predecessors and successors as Bishop of the Roman Catholic Diocese of Lake Charles; and Mark Anthony Broussard.  In his original complaint, the plaintiff details the history of concealment of sexual abuse by the Roman Catholic Church, and presents various claims against each of the defendants, including a claim that the defendants were aware of

---

[1]According to the plaintiff, in March 2012, the Calcasieu Parish Sheriff contacted plaintiff after the Sheriff had reviewed the Diocese of Lake Charles' personnel file on Broussard; in a deposition given by Broussard in 1998, Broussard apparently confessed that he had sexually abused plaintiff and other children as a Catholic cleric and priest with the Archdiocese of New Orleans and the Diocese of Lake Charles.  Only after hearing about Broussard's confession did plaintiff recall Broussard's sexual abuse.

the harm to the plaintiff and that the concealment effort was part of a civil conspiracy to keep the rampant sexual abuse in the church a secret; he charges the defendants committed fraud in their concealment of Broussard's sexual misconduct; that the Archdiocese and Diocese defendants negligently employed Broussard, failed to provide reasonable supervision, failed to investigate, used deception to conceal his sexual misconduct, and breached their fiduciary duty to plaintiff; the Holy See breached its duties to protect and warn plaintiff, and to provide reasonable supervision of its employees, as well as concealed child sexual abuse, breaching its duties under federal common law, state law, and international law; and that the Holy See, Broussard, and the Archdiocese and Diocese defendants are liable for intentional infliction of emotional distress.  Plaintiff seeks $6,000,000 in damages and $12,000,000 in exemplary damages.

The original summons directed to the Holy See issued on February 13, 2013; a revised summons, correcting the amount of time allowed for the Holy See to respond under the Foreign Services Immunities Act, issued on February 26, 2013.

On March 19, 2013 the Lake Charles Diocese and Bishop Provost filed an answer.  A few days later, the New Orleans Archdiocese and Archbishop Aymond filed motions requesting dismissal.  On April 23, 2013 the plaintiff requested that the Clerk of Court transmit his complaint and other related service documents to the head of the

3

Holy See's foreign ministry pursuant to 28 U.S.C. § 1608(a)(3). The next day, the Court granted Archbishop Aymond's motion to dismiss the claims against him (as well as the claims asserted against "the Archbishops" generally or Archbishop Aymond's "predecessors and successors"); the Court also granted the Archdiocese of New Orleans' motion to dismiss the punitive damages claims asserted against it.   The next day, on April 25, 2013, the Clerk of Court sent the plaintiff's service documents by registered mail to the Holy See's Secretary for Relations with States; but on May 20, 2013 the service documents were returned to the Clerk of Court, marked "refused."

On May 23, 2013, Bishop Provost and the Society of the Roman Catholic Church of the Diocese of Lake Charles requested judgment on the pleadings; Bishop Provost requested that the plaintiff's claims against him be dismissed for the same reasons that the Court dismissed the claims against Archbishop Aymond; and the Diocese requested dismissal of the punitive damages claims asserted against it.   Thereafter, the Court granted the plaintiff's "emergency" motion to reset the submission date on the Bishop's and Diocese's motion; the plaintiff insisted that an amended complaint would be forthcoming.[2]

---

[2]Counsel for plaintiff suggested that "deficiencies in Plaintiff's pleadings [that] have previously been recognized and addressed by the Court" would be remedied when plaintiff filed an amended complaint.  In granting the plaintiff's request to continue the submission date on the motion, the Court instructed:

On July 5, 2013 the plaintiff requested, and the Clerk of Court entered, an entry of default as to Mark Broussard.  That same day, the plaintiff requested that the Clerk of Court dispatch the original complaint and other service documents to the State Department to effect service upon the Holy See via diplomatic channels under 28 U.S.C. § 1608(a)(4).  Less than two weeks later, on July 16, 2013, the plaintiff requested leave to file an amended complaint and responded to the motion for judgment on the pleadings, urging the Court to consider the proposed amended pleading.

In connection with the plaintiff's efforts to serve the Holy See, on July 22, 2013 the Clerk of Court filed its return receipt for the dispatch of the service materials (including the original complaint) to the Office of Legal Affairs at the Department of State.

Two days later, on July 24, 2013, the Court granted in part and denied in part the Bishop's and the Diocese's motion for judgment on the pleadings: the Court granted the Diocese's request that the punitive damages claim asserted against it be dismissed, but denied, without prejudice, the Bishop's request that the

---

To the extent that the plaintiff suggests in his papers that he intends to file an amended complaint, the Court reminds counsel to familiarize herself with the Federal and Local Rules and admonishes counsel not to delay any request to amend the complaint that was filed on January 23, 2013.

See Order dated 6/5/2013.

plaintiff's claims be dismissed, pending the outcome of the plaintiff's motion to amend his pleadings set before the magistrate judge.  The Court observed: "By waiting until July 16, 2013 to request leave to file an amended complaint, counsel for plaintiff did not heed this Court's admonishment... 'not to delay any request to amend the complaint that was filed on January 23, 2013'"; the Court noted the "dilatory conduct" of plaintiff's counsel, and pointed out that the plaintiff had been placed on notice of the deficiency of the original complaint "as early as March 22, 2013."

On August 21, 2013 the magistrate judge granted in part and denied in part the plaintiff's motion for leave to amend his complaint.  The magistrate judge granted the plaintiff's amendment to the extent that (i) the plaintiff removed all defendants except Broussard from his claim for punitive damages; (ii) the plaintiff removed the generic terms "Archbishops" and "Bishops" from the amended complaint; and (iii) the plaintiff adds numerous factual allegations "regarding Broussard's...training...that clarify the direct liability claims against the Holy See and the Archdiocese and its Archbishops"; however, the magistrate judge denied the amendment to the extent the plaintiff sought to reinstitute an individual claim against Archbishop Aymond because "[t]he new allegations in the amended complaint fail to cure the deficiencies outlined in the District Court's Order dated April 24, 2013."  The magistrate judge ordered that the plaintiff file his amended

complaint within 14 days.

After the plaintiff filed his amended complaint on September 4, 2013, Bishop Provost renewed his motion for judgment on the pleadings, focusing on the allegations from the plaintiff's original complaint. On October 9, 2013, this Court denied the motion, observing: "The [plaintiff's] allegations might or might not be provable, or even true, but the defendant simply has not demonstrated that the plaintiff's amended complaint fails to state a claim for relief that is plausible on its face."

The plaintiff has not attempted to serve the Holy See with the amended complaint or any revised service documents. On December 6, 2013 the Embassy of the United States of America to the Holy See transmitted the original complaint and related service documents to the Holy See's Secretariat of State via diplomatic note. The service documents included the original complaint; the notice of suit described the allegations in the original complaint and stated that $18,000,000 in damages and exemplary damages were sought; the notice also identified the plaintiff's original complaint as the nature of documents served, and stated that a response to the complaint was due not later than 60 days after these document[s] are received.

Holy See now seeks dismissal of the plaintiff's lawsuit for insufficient service of process, insufficient process, and lack of personal jurisdiction. The Archdiocese, the Diocese of Lake

Charles, and Bishop Provost now seek discovery limited to the issue of prescription.   And, the plaintiff requests a stay of all discovery pending this Court's resolution of the Holy See's defense of foreign sovereign immunity.

I.
A.

Holy See invokes its immunity and seeks dismissal of the plaintiff's lawsuit on the grounds of lack of personal jurisdiction under Rule 12(b)(2); insufficient process under Rule 12(b)(4); and insufficient service of process under Rule 12(b)(5).

Holy See is indisputably a foreign sovereign.   The Foreign Sovereign Immunities Act is the sole basis for personal and subject matter jurisdiction over a foreign sovereign in United States courts.   Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428, 434 (1989); 28 U.S.C. §§ 1330, 1602-11.

As a sovereign, the Holy See is presumptively immune from suit.   28 U.S.C. § 1604.   FSIA immunity "is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself." United States v. Moats, 961 F.2d 1198, 1203 (5th Cir. 1992); see also Kelly v. Syria Shell Petroleum Dev., 213 F.3d 841, 849 (5th Cir. 2000)(holding that foreign sovereign immunity includes immunity "from the costs, in time and expense, and other disruptions attendant in litigation"). This is a serious issue, but one whose resolution must be delayed due to glaring insufficiencies in the manner in which this case has

8

been pursued.

*B.*

"Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." <u>Murphy Bros., Inc. Michetti Pipe Stringing, Inc.</u>, 526 U.S. 344, 350 (1999). "In the absence of valid service of process, proceedings against a party are void." <u>Aetna Bus. Credit v. Universal Decor</u>, 635 F.2d 434, 435 (5th Cir. 1981).

Under Federal Rule of Civil Procedure 4(c)(1), a "summons must be served with a copy of the complaint." Fed.R.Civ.P. 4(c)(1). "The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service." <u>Id.</u>

A foreign state "must be served in accordance with 28 U.S.C. § 1608." Fed.R.Civ.P. 4(j)(1). Section 1608(a) of the Foreign Service Immunities Act "sets forth the *exclusive procedures* for service on a foreign state. <u>Magness v. Russian Fed'n</u>, 247 F.3d 609, 615 (5th Cir. 2001)(emphasis in original). Proper service of process under section 1608(a) is a statutory prerequisite for the exercise of personal jurisdiction over a foreign sovereign. 28 U.S.C. § 1330(b).

The U.S. Court of Appeals for the Fifth Circuit mandates that a plaintiff "strictly comply with the statutory service of process provisions when suing a foreign state...under section 1608(a)."

<u>Magness</u>, 247 F.3d at 611.   In fact, actual notice to a foreign state of the pendency of a lawsuit is "irrelevant."   <u>Finamar Investors v. Republic of Tadjikistan</u>, 889 F. Supp. 114, 118 (S.D.N.Y. 1995); see also <u>Magness</u>, 247 F.3d at 617.   Only strict adherence to the statutory requirements for accomplishing service renders service effective.   <u>Magness</u>, 247 F.3d at 615-16.

Section 1608(a)'s service of process provisions are explicitly hierarchical: a plaintiff must attempt service in the order required by the statute.   <u>Id.</u> at 613.   Section 1608(a) sets forth the following methods of service:

(a) Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:

(1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
(2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
(3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed to and dispatched by the clerk of court to the head of the ministry of foreign affairs of the foreign state concerned, or
(4) if service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of court to the Secretary of State in Washington, District of Columbia, to the attention fo the Director of Special

Consular Services – and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C. § 1608(a).

The notice of suit served upon a foreign sovereign must be "in a form prescribed by the Secretary of State by regulation." Id. 22 C.F.R. § 93.2 "articulate[s] the necessary ingredients of sufficient 'notice of suit' under Section 1608." Fly Brazil Grp., Inc. v. Gov't of Gabon, 709 F. Supp. 2d 1274, 1280 (S.D. Fla. 2010). The regulation requires that a "Notice of Suit ... shall be prepared in the form that appears in the Annex to this section [and that] a party shall in every instance supply the information in items 1 through 5 of the form appearing in the Annex to this section." 22 C.F.R. § 93.2(a), (b). Items 1 through 5 of the Annex form require the serving party to supply the following information:

1. Title of legal proceeding; full name of court; case or docket number;
2. Name of foreign state...concerned;
3. Identity of Other Parties;
4. Nature of documents served (e.g., Summons and Complaint; Default Judgment);
5. Nature and purpose of the proceedings; why the foreign state ... has been named; relief requested....

Id. at § 93.2 (Annex).

Once a defendant contests the adequacy of service of process, the burden is on the plaintiff to establish the validity of

service.  <u>Aetna Bus. Credit v. Universal Decor</u>, 635 F.2d 434, 435 (5th Cir. 1981); <u>Sys. Signs Supplies v. United States Dep't of Justice</u>, 903 F.2d 1011, 1013 (5th Cir. 1990).

<em>C.</em>

Mindful of the plaintiff's obligation to strictly comply with these mandatory protocols, the Court turns to the issue of whether the plaintiff can establish the validity of service on the Holy See.  Because the plaintiff failed to serve a copy of the operative complaint, the Holy See contends that the attempted service of process failed to comply with Rule 4(c)(1) of the Federal Rules of Civil Procedure, and that service failed to strictly comply with 28 U.S.C. § 1608(a).  The Court agrees.

An "amended complaint supersedes the original complaint and renders it of no legal effect." <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994); <u>see</u> <u>also</u> <u>Vadas v. United States</u>, 527 F.3d 16, 22 n.4 (2d Cir. 2007).  Where "an amended pleading supersedes the original complaint, subsequent service of the superseded prior or original pleading is improper." <u>Gilles v. United States</u>, 906 F.2d 1386, 1390 (10th Cir. 1990); <u>Gellert v. Richardson</u>, No. 95-256-CIV-ORL-19, 1996 WL 107550, at *2 (M.D. Fla. Jan. 26, 1996), aff'd, 124 F.3d 1299 (11th Cir. 1997)("Serving a complaint which has been superseded with the summons on a defendant after filing an amended complaint is not proper service of process.").  Simply put, Rule 4(c)(1) requires that a summons be served with a copy of the

12

complaint, and "service of a superseded complaint with the summons does not fulfill the requirements of the rule."  Wright & Miller, 4A FED. PRAC. & PROC. CIV. § 1093.   Notwithstanding these undisputed principles, the original complaint was served on the Holy See three months after the plaintiff filed his amended complaint.  Plaintiff failed to comply with Rule 4(c)(1).

Likewise, the plaintiff's attempted service of process failed to strictly comply with the FSIA's service requirements in 28 U.S.C. § 1608(a) because the plaintiff failed to serve the operative amended complaint, did not serve a translation of the operative complaint, and failed to provide a notice of suit that accurately described the plaintiff's lawsuit.

The plaintiff does not dispute his failure to serve the amended complaint, but counsel nevertheless pleads that "[p]laintiff honestly believes that the service on Defendant Holy See was completed in strict compliance with" the FSIA's service requirements.[3]  Counsel's honest (and less than skillful) belief is irrelevant.  Strict compliance is the standard.  It was not met.

---

[3]The plaintiff invokes Baker v. Socialist People's Libyan Arab Jamahirya, 810 F. Supp. 2d 90 (D.D.C. 2011) for the proposition that no separate service of an amended complaint is required when no new claims are asserted in an amended complaint. Putting aside the parties' dispute as to whether new claims are asserted in the amended complaint, the plaintiff's reliance on Baker is useless because, in Baker, the district court considered the distinct issue of whether re-service of the amended complaint was required on an already-served defendant that had failed to appear, which implicated Rule 5(a)(2).

13

Nevertheless, the Court will indulge the plaintiff's alternative request that a second opportunity be allowed to effect service on Holy See.  The Court will allow the plaintiff 45 days to attempt service, so long as the plaintiff commences his efforts immediately and makes every effort to complete service expeditiously.  The Court will not be lured into counsel's repeated self-inflicted deficiencies.

## II.

The Court now takes up the parties' competing views concerning the appropriateness of conducting discovery under the circumstances presented, where the plaintiff will attempt to properly serve the Holy See.  The Diocese, Archdiocese, and Bishop Provost contend that they should be permitted to engage in discovery now, "limited" to the issue of prescription.[4]  The plaintiff and the Holy See disagree; the plaintiff contends that a stay of discovery, pending resolution of the Holy See's defense of foreign sovereign immunity,

---

[4]Defendants' request, tempting as it may be in the abstract, presumes that a fair limiting principle can be articulated and observed.  The plaintiff counters that no judicial economy would be served by allowing discovery directed only to prescription. To the contrary, the plaintiff contends, bifurcation of discovery would be impractical, in light of the plaintiff's detailed allegations implicating defendants in concealment, such that resolving whether the plaintiff's claims are time-barred are inextricably intertwined with other disputed facts; and, by way of example, identifying potential issues of fact that cannot be resolved absent a hearing, the plaintiff will rely on expert testimony to support his tolling argument based on repressed memory.  The Court wishes to stress to all counsel the mandate of 28 U.S.C. § 1927.

is warranted.  The Holy See, which obviously has no obligation to participate in discovery unless and until the service issue (and its presumptive immunity) is resolved, suggests that it takes no position on the issue of discovery amongst the other parties. However, the Holy See expresses concern regarding whether discovery among the plaintiff and other defendants might prematurely entangle it in litigation prior to a determination as to its immunity; the Holy See points out that the issue of whether foreign sovereign immunity includes protection from being drawn into discovery targeting third parties is currently pending before the United States Supreme Court.  See Republic of Argentina v. NML Capital, Ltd., 695 F.3d 201 (2d Cir. 2012), cert. granted, 134 S. Ct. 895 (Mem.)(Jan. 10, 2014)(No. 12-842).[5]  This concern appears well-founded,[6] especially where, as here, the plaintiff alleges that the Holy See's co-defendants are agents of the Holy See. In light of the Court's discretion in managing discovery, the Court finds that a stay of discovery pending resolution of the Holy See's defense of

---

[5]In NML Capital, the Second Circuit held that because the district court ordered only discovery, not the attachment of sovereign property, and because that discovery was directed at third-party banks, Argentina's sovereign immunity was not infringed.  In the amicus brief filed by the U.S. Solicitor General, the Executive Branch advances the position that discovery directed at third parties "may burden the foreign state itself" and raises the same "significant comity, reciprocity, and other foreign-relations concerns" as discovery against a foreign state itself.

[6]No other party addresses this issue.

foreign service immunity is appropriate; the issue may be revisited as circumstances change, if the Holy See is ever properly brought before this Court.

Accordingly, the Holy See's motion to dismiss is GRANTED without prejudice to the plaintiff being permitted to attempt service within 45 days; the motion for limited discovery filed by the Archdiocese, the Diocese, and Bishop Provost is DENIED, and the plaintiff's motion to stay discovery is GRANTED, but the stay may be lifted if a supported request is timely filed, fully briefed, and granted by the Court.

New Orleans, Louisiana, April 2, 2014

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE